UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE ESTATE OF JAMES HARRIS                                                                          PLAINTIFF

V.                                                                            CIVIL ACTION NO. 3:21-CV-306-DPJ-FKB

JONATHAN M. EICHELBERGER AND                                                              DEFENDANTS
THE EICHELBERGER LAW FIRM PLLC

ORDER

The parties to this case jointly represented plaintiffs in another suit and now dispute the distribution of the attorneys' fees recovered in that case. Specifically, The Estate of James Harris seeks (1) a declaration that Defendants Jonathan M. Eichelberger and The Eichelberger Law Firm PLLC have no interest in settlement funds held in Defendants' escrow account and (2) an injunction ordering Defendants to tender the funds to the Harris Estate. Defendants have filed motions asking the Court to abstain from hearing the case, Mot. [10], and alternatively to dismiss it for failure to join other plaintiffs' attorneys in the underlying case as necessary parties, Mot. [12]. As explained below, Defendants' motions are denied.

I.      Facts and Procedural History

In 2007, several owners of Mississippi businesses that sold car batteries ("the Lush plaintiffs") sued the attorneys who represented them in previous litigation "against a battery manufacturer related to defective batteries." Compl. [1] ¶ 11. In their legal-malpractice case against their former attorneys, the Lush plaintiffs were represented by a series of attorneys. Judy Barnett initially represented the Lush plaintiffs and filed the *Lush* complaint in Hinds County Circuit Court. "Shortly thereafter, attorney Drew Martin became lead counsel for the Lush [p]laintiffs and had a 40% contingency contract with [them.]" *Id.* ¶ 12. Martin "associated the law firm of Merkel & Cocke to assist with prosecution of the case." *Id.*

Near the close of discovery, the Lush plaintiffs fired Martin and Merkel & Cocke, and those attorneys filed attorney liens in the *Lush* case. Alabama attorney James Harris then became the Lush plaintiffs' lead counsel. He "had a 40% contingency contract with the Lush [p]laintiffs." *Id.* ¶ 15. Harris associated attorneys Darwin Maples and John Waddell to work with him on the case before he eventually associated Defendant Eichelberger to serve as local counsel. Eichelberger had separate fee agreements with each of the Lush plaintiffs "whereby he would be paid a $50,000 flat fee if the matter resolved prior to trial and a $100,000 flat fee if a resolution or recovery was achieved after trial commenced." *Id.* ¶ 16. Then, in February 2015, the *Lush* case settled for a confidential amount shortly after the trial began.

Given the overlapping claims to the attorneys' fees in the Lush case, the Lush plaintiffs signed an April 2015 agreement with Martin, Merkel & Cocke, Harris, Maples, Barnett, and Eichelberger. *See* Agreement [11-1]. Under that contract, "the Lush [p]laintiffs could receive their portion of the settlement funds, the respective attorneys could be reimbursed the litigation expenses they advanced to prosecute the litigation, and Mr. Eichelberger could be paid the $100,000 under his separate contracts with the [p]laintiffs." *Id.*[1] The remaining funds "would be held in Defendant Eichelberger's Trust Account pending resolution of the splitting of attorney fees." *Id.* Later in 2015, Harris died, and the Harris Estate was opened in Alabama. At some point, an estate was also opened for Maples.[2]

Fast forward to March 2020, and "an agreement to divide the contingency fees was reached between the parties holding contingency fee contracts: the Martin/Merkel interest and

---

[1] Harris separately agreed to pay Barnett $16,002.50 from his portion of the attorney fees. Compl. [1] at 6 n.2.

[2] For clarity, the Court will refer to the Maples Estate as "Maples."

the Estate of James Harris." Compl. [1] ¶ 26. Eichelberger sent "the portion of the fee owing to Martin/Merkel . . . to Mr. Merkel." *Id.* ¶ 27. But Eichelberger never released the remaining $650,000 to the Harris Estate. Instead, on September 17, 2020, he filed a Petition for Declaratory Judgment in Hinds County Chancery Court against the Harris Estate, Barnett, Maples, and Waddell.

In that case, Eichelberger sought a declaration that the "applicable statute of limitation bars any claim of the Respondents, or in the alternative that the allocation of fees be governed by the expert witness's determination of the same." State Ct. R. [16-2] at 3 (Pet. ¶¶ 10, 11). Though he filed that suit, Eichelberger failed to initially serve any of the defendants in that case, including the Harris Estate.

Three things happened after that. First, the Harris Estate filed the instant Complaint for Declaratory Judgment and Injunctive Relief in this Court on May 3, 2021 (allegedly before it learned of Eichelberger's state-court case). In this federal suit, the Harris Estate seeks a declaration that "Defendants have no legal claim to any portion of the $650,000 being held in their . . . Trust Account, as any such claim they may have had is barred by the applicable statute of limitations under Mississippi law." Compl. [1] at 11. It also asks the Court to "[i]ssue temporary and permanent injunctive relief, without bond, requiring . . . Defendants to tender to the Estate of James Harris the $650,000 being held in their . . . Trust Account." *Id.* Second, Eichelberger moved for and received an extension of time from the state court to serve the defendants in his suit. Once service was perfected, the Harris Estate removed Eichelberger's state-court complaint to this Court; that case will be remanded in a separate order entered on this date. Finally, Defendants responded to the Harris Estate's Complaint with two motions: one

asking the Court to abstain from hearing this case due to the earlier-filed state-court case, and one to dismiss for failure to join Barnett, Maples, and Waddell as necessary parties.

II.     Analysis

    A.     Abstention

The Eichelberger Defendants say dismissal or a stay is warranted under the Declaratory Judgment Act and the *Brillhart* abstention doctrine.  *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).  "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject[-]matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  The Supreme Court in *Brillhart* reasoned,

> [o]rdinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory[-]judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state[-]court litigation should be avoided.

*Brillhart*, 316 U.S. at 495.  "Consistent with *Brillhart*, abstention from a declaratory[-]judgment action is ordinarily appropriate when the state offers an adequate alternative forum in which to resolve the particular dispute."  *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994).

The Court is not convinced that the doctrine applies because the Harris Estate seeks both declaratory and injunctive relief.

> When a party seeks both injunctive and declaratory relief, the appropriateness of abstention must be assessed according to the doctrine of *Colorado River* [*Water Conservation District v. United States*, 424 U.S. 800 (1976), unless the] request for injunctive relief is either frivolous or is made solely to avoid application of the *Brillhart* standard.

*Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000).  The Eichelberger Defendants never address this issue and have not otherwise shown that the request

for injunctive relief is frivolous or was made to avoid *Brillhart*. Indeed, it appears the Harris Estate made its request for injunctive relief before discovering Eichelberger's state-court case. The Eichelberger Defendants' motion to dismiss based on *Brillhart* abstention is denied.

      B.      Failure to Join Necessary Parties

The Eichelberger Defendants also say the case should be dismissed because the Harris Estate failed to join attorneys Barnett, Maples, and Waddell as parties. Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19." And "Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).[3]

When assessing a motion under Rule 12(b)(7), the Court conducts a two-step inquiry under Rule 19:

> The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit. But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation. Factors to consider under Rule 19(b) include

---

[3] Rule 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

> "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed."

*Id.* at 439 (quoting *Cornhill Ins. PLC v, Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997)) (footnote omitted). "While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after 'an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Hood v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009) (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986)).

Starting with step one, the Eichelberger Defendants say the omitted attorneys "have legally protected interests related to the subject matter of this suit"—"interests in the fees" at issue here. Defs.' Mem. [13] at 2. And they say that the case without the omitted attorneys "would impair or impede the absent parties' ability to protect their interests" insofar as they "would be affected by a determination that a statute of limitations has expired to make claims to the fees at issue." *Id.*

Neither of the alternative grounds for joinder under Rules 19(a)(1)(A) and 19(a)(1)(B) exist. First, under Rule 19(a)(1)(A), the Court can "accord complete relief among existing parties." The Complaint seeks (1) a declaration that *the Eichelberger Defendants* are not entitled to the funds they are holding and (2) an injunction forcing *them* to turn the funds over to the Harris Estate. Compl. [1] at 11. The Complaint seeks no relief from the absent attorneys and no declaration that their potential claims are time barred.

Turning to Rule 19(a)(1)(B)(i), the relevant question is whether any absent attorney "claims an interest relating to the subject of the action and is so situated that disposing of the

6

action in the person's absence may. . . as a practical matter impair or impede the person's ability to protect the interest."[4]

Assuming the "subject of the action" is the funds the Eichelberger Defendants hold, it is not apparent that all absent attorneys make a claim to it. *Id.* According to the Complaint:

> Prior to his death, James Harris agreed to pay attorney Judy Barnett, the attorney who originally filed the [*Lush* c]ase, the sum of $16,002.50 from his portion of the attorney fees. The Estate . . . has informed Ms. Barnett that it will honor that explicit agreement and pay her that sum when it has access to the funds. Waddell, an Alabama attorney, resolved his interest with James Harris prior to Harris's death in a manner that did not implicate the funds at issue here. Maples, who was in the case only briefly, did not present any claim when given the opportunity and has no interest in the funds at issue here.

Compl. [1] at 6 n.2. Additionally, Waddell and Barnett released their attorneys liens in the *Lush* case in filings making clear that each "agree[d] to look solely to Plaintiffs' counsel James Harris for payment of any amount due me or my law firm." Releases [1-10] at 1; *accord id.* at 2. Finally, as to Waddell, the Eichelberger Defendants acknowledge that he was never a signatory to the fee agreement, and they at most argue that Waddell "*may* have a claim against" the Harris Estate. Defs.' Mem. [13] at 1 (emphasis added).

Given these facts, the Eichelberger Defendants have not met their initial burden of showing that Barnett and Waddell are possibly necessary parties. *Hood*, 570 F.3d at 628. Alternatively, to the extent Defendants did meet that burden, the Harris Estate rebutted it because neither Barnett nor Waddell has a claim to the escrow funds that would be impeded by their absence under Rule 19(a)(1)(B); they both agreed to assert any claims directly against Harris. Finally, neither Barnett nor Waddell is "required for the fair and complete resolution of the dispute at issue." *HS Resources, Inc.*, 327 F.3d at 438.

---

[4] Neither party suggests that Rule 19(a)(1)(B)(ii) applies.

Maples's absence is trickier.  While Maples (through a court-appointed guardian) also filed a notice in the *Lush* case, it differed from the notices Barnett and Waddell filed.  Maples's notice stated that his

> lien filed in [the *Lush*] action[,] or to which [he] might be entitled by virtue of prior representation of one or more of the Plaintiffs[,] will hereafter be satisfied pursuant to the terms of the agreement entered into by all parties purportedly holding attorney liens related to this cause of action.

Releases [1-10] at 3.  As for the agreement referenced in the Maples notice, it stated that

> the claims of James Harris and all other counsel associated by him or involved with him in any manner following the termination of involvement by Martin and Merkel & Cocke will likewise be treated as one claim with any subsequent allocation of the fees resulting from such claim to be determined solely by the agreement of Harris and his associated counsel.

Agreement [11-1] at 3.  Finally, on the same day Maples's guardian signed the release (June 2, 2015), he also demanded $25,000 in fees from Eichelberger, who, by agreement, held the disputed funds.  *See* Demand [24-1].

Based on this history, Maples claimed an interest in the subject of the action at one point, but he has apparently done nothing to pursue it since 2015.  Neither party addresses whether this satisfies Rule 19(a)(1)(B), nor do they take a deep dive into the legal issues under Rule 19(a)(1)(B)(i).  For now—based on what has been argued—it is not apparent that Maples is a necessary party.

Regardless, adding Maples (or the other absent attorneys) would not destroy diversity jurisdiction even if the analysis reached step two.  The Eichelberger Defendants state—with no explanation—that Barnett and Maples should be joined as plaintiffs.  Pl.'s Mem. [13] at 2.  Sure enough, aligning the parties that way would destroy complete diversity of citizenship because the Eichelberger Defendants, Barnett, and Maples are all Mississippi citizens.  Defs.' Mem. [13] at 2.  But "[w]hen considering whether joinder under Rule 19 will destroy subject matter

jurisdiction, the Court must align the parties according to the purpose of the suit and the primary and controlling matter in dispute." *Manning v. Manning*, 304 F.R.D. 227, 231 (S.D. Miss. 2015) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69–70 (1941)). And "[t]he generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984) (citation omitted).

Here, Maples and Barnett are better aligned as defendants. As the Eichelberger Defendants themselves admit, the Harris Estate's "interests are *not* aligned with the absent parties' interests, as the Plaintiff seeks a declaratory judgment that the statute of limitations bars claims by the Defendants and that the Plaintiff is therefore entitled to the entirety of the fees." Defs.' Mem. [13] at 3 (emphasis added). Assuming that argument is true, then the Eichelberger Defendants and the absent attorneys share the same "ultimate interests in the outcome of the action." *Lowe*, 723 F.2d at 1178. Adding Maples (or Barnett) as a defendant would not spoil diversity jurisdiction.[5]

In sum, Defendants have not shown dismissal is required for failure to join necessary parties. Their second motion to dismiss is also denied.

III.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. As stated above, Defendants' motions to dismiss [10, 12] are both denied. As to

---

[5] The Eichelberger Defendants face a *Catch 22*. If they are correct that the statute-of-limitations issue applies to Barnett and Maples, then joining them would not affect diversity jurisdiction because it aligns them with the Eichelberger Defendants (at least in this litigation). But, if the statute-of-limitations issue does not impact Barnett and Maples, then the relief sought in this case would not impair or impede their interests, and joining them would not be necessary under Rule 19(a)(1)(B).

the question whether Maples should be joined, the motion is denied without prejudice because the legal issues have been underdeveloped. Finally, given the age of this dispute and its complex procedural posture, the parties are instructed to contact United States Magistrate Judge F. Keith Ball within 10 days of this Order to set the matter for settlement conference.

      **SO ORDERED AND ADJUDGED** this the 6th day of December, 2021.

                                s/ *Daniel P. Jordan III*
                                CHIEF UNITED STATES DISTRICT JUDGE